Case 13-16954 Filed 09/25/14 Doc 596

FILED
SEP 25 2014
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

TJOF

POSTED ON WEBSITE

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re ) Case No. 13-16954-B-11
) DC No. CRD-1
Madera Roofing, Inc., )
)
Debtor. )
)

## MEMORANDUM DECISION REGARDING MOTION FOR COMPENSATION AND ORDER TO SHOW CAUSE

This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Robin Tubesing, Esq., appeared on behalf of the U.S. Trustee, Tracy Hope Davis, Esq.

Caroline R. Djang, Esq., of Rutan & Tucker, LLP, appeared on behalf of the applicant, Rutan & Tucker, LLP.

Riley C. Walter, Esq., of Walter & Wilhelm Law Group, appeared on behalf of the chapter 11 trustee, James S. Lowe.

   For seven months the law firm of Rutan & Tucker, LLP ("Rutan") served as general counsel for the chapter 11 debtor, Madera Roofing, Inc. (the "Debtor"). Prior to the bankruptcy, the Debtor paid Rutan a $50,000 retainer for work anticipated in connection with the case (the "Retainer'). Rutan's services terminated on May 30, 2014, after the court appointed a chapter 11 trustee and the

lead attorney on the case, Eric Fromme ("Fromme"), moved to a new law firm.[1] Rutan has now filed an application for approval and payment of its legal fees and costs (the "Fee Application"). However, based on Rutan's billing records, it appears that Rutan was a creditor of the Debtor and was not eligible to be employed as a professional at the commencement of this case, at the time it filed an application for employment, or at anytime thereafter. This fact was not disclosed and did not become apparent until the U.S. Trustee (the "UST") filed an objection to the Fee Application based, in part, on Rutan's failure to account for the Retainer.

Once the eligibility problem was discovered, the court issued an order to show cause directing Rutan to appear and show why it should not be compelled to disgorge the Retainer (the "OSC"). Rutan filed a responsive pleading and appeared for oral argument. For the reasons set forth below, Rutan's Fee Application will be denied. Rutan must also account for and turn over the Retainer to the chapter 11 trustee.

This memorandum decision contains the court's findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a), made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 9014(c) and 7052. The court has jurisdiction over this matter under 28 U.S.C. § 1334 and 11 U.S.C. § 330[2] and General Orders 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding as defined in

---

[1] Fromme submittied a substitution of counsel after he moved to the law firm of Jeffer Mangels Butler & Mitchell LLP ("JMBM"). Three weeks after the substitution was approved, Fromme filed a motion on behalf of JMBM seeking to withdraw completely as counsel for the Debtor. That matter was denied. JMBM and Fromme remain the Debtor's counsel of record.

[2] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated *after* October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

28 U.S.C. § 157(b)(2)(A).

**BACKGROUND AND FINDINGS OF FACT.**

**Rutan's Employment Application.** This bankruptcy case commenced on October 25, 2013, with the filing of a chapter 11 petition prepared by Rutan. Prior to commencement of the case, on or about July 12, the Debtor gave Rutan the $50,000 Retainer for legal services to be rendered in relation to the bankruptcy. One month after the petition was filed, on November 25, Rutan filed an application for employment pursuant to § 327(a) (Doc. No. 44: the "Employment Application") supported by a declaration from Fromme (Doc. No. 47, the "Fromme Declaration"). The caption of the Employment Application and the Fromme Declaration both identified Fromme and Caroline R. Djang ("Djang") as the two attorneys who would be "principally involved" in representing the Debtor. (Doc. No. 47 at ¶ 15.) The Employment Application states affirmatively that Rutan was "disinterested" within the definition of § 101(14) and "well qualified" to represent the Debtor.

The Fromme Declaration disclosed the receipt of a retainer in an unspecified amount and stated that $29,527.72 remained as of the date of the petition.[3] Fromme's Declaration included an ambiguous statement which suggested, in hindsight, that Rutan had not yet applied the Retainer to all of its prepetition services.

///
///
///
///

---

[3] The actual amount of the Retainer does not appear anywhere in the Employment Application and supporting documents. It does appear in the Disclosure of Compensation of Attorney For Debtor filed with the petition and again in the Statement of Financial Affairs filed about two weeks later. Rutan apparently received the Retainer on July 12, 2013.

3

> Rutan received a retainer and an advance against expenses for all services to be performed . . . with respect to the prosecution of this Chapter 11 Case. As of the Petition Date, the amount of the retainer was approximately $29,527.72. Rutan *intends to apply the retainer* to any outstanding amounts relating to the period prior to the Petition Date which were not processed through Rutan's billing system as of the Petition Date, and to retain the balance on account of services rendered and expenses incurred subsequent to the Petition Date. . . .

Fromme Declaration at ¶ 10 (emphasis added).

However, Fromme went on to state unequivocally that Rutan was *not a creditor* of the Debtor, that all internal prepetition accounting adjustments had been made, that "advance payments" had been applied to prepetition services in the amount of $20,472.28, and that Rutan was still holding $29,527.72 in its Retainer account.

> 11. *Rutan is not a creditor of the Debtor*. Rutan has received *periodic fee advances* from the Debtor for professional services to be performed and expenses to be incurred in connection with the services Rutan has and will render on behalf of the Debtor. Rutan *used the advance payments to credit the Debtor's account* for actual professional services performed and expenses incurred and reduced the balance of the credit available to the Debtor by the amount of such charges. As of the Petition Date, the total billed fees and expenses incurred by Rutan in the one year prior to the Petition Date approximated $20,472.28. Rutan had a remaining credit balance in favor of the Debtor for future professional services to be performed, and expenses to be incurred, in the approximate amount of $29,527.72.
>
> 12. After application of amounts for any additional prepetition professional services and related expenses, the excess advance amounts will be held by Rutan as a retainer.

Fromme Declaration at ¶ 11 & 12 (emphasis added).

Fromme described the process used by Rutan to discover conflicts and suggested that Rutan had employed a comprehensive internal investigation to make sure that it was "disinterested" and held no claim against the Debtor:

/ / /

/ / /

4

> 25. As a result of the process described above, except as they are or have been the attorneys for the Debtor and except as otherwise set forth herein, [Rutan] and all of the attorneys comprising or employed by it are *"disinterested persons"* as defined in Bankruptcy Code section 101(14) . . . .
>
> 26. Rutan compiled responses to the foregoing inquiries for the purposes of preparing this Declaration. Responses to the inquiry described above indicate that *no Rutan personnel . . . holds any claims against . . . Debtor.*

Fromme Declaration at ¶ 25 & 26 (emphasis added).

The Fromme Declaration concludes with an affirmation of Rutan's eligibility for employment within the terms and the Bankruptcy Code:

> 31. Based on the foregoing, insofar as I have been able to ascertain after diligent inquiry, I believe Rutan does not hold or represent an interest adverse to the Debtor's estate, and *Rutan is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code*, as modified by section 1107(b) of the Bankruptcy Code.
>
> 32. The foregoing constitutes the statement of Rutan pursuant to sections 327(a), 329, and 504 of the Bankruptcy Code and Bankruptcy Rules 2014(a) and 2016(b).

Fromme Declaration at ¶ 31 & 31 (emphasis added).

The Fromme Declaration did not offer any details with regard to the "periodic fee advances" referred to in paragraph 11. It did not disclose that the Debtor had actually paid Rutan more than $4,000 (in addition to the Retainer) prior to the bankruptcy, which had been applied to the account, leaving $15,983.28 owing for unpaid services at the commencement of the case. Contrary to the statement in the Fromme Declaration, Rutan had not applied any of the Retainer to its prepetition services. Indeed, this fact was not discovered until Rutan responded to the UST's objection to the Fee Application. Based on the representations in the Employment Application and the Fromme Declaration, the court entered an order approving the Employment Application and authorizing the Debtor to employ Rutan as its general counsel pursuant to § 327(a), effective as of October 25, 2013, the date of the petition was filed (the "Employment Order";

Doc. No. 67, Dec. 16, 2013).

**The Appointment of a Trustee.** Thereafter, the Debtor's case did not progress well and there were serious problems with its administration. On February 27, 2014, the UST filed a motion to convert the case to chapter 7 based on numerous grounds, including, *inter alia*, unreasonable delay, the discovery of an unauthorized payment from the Debtor to Rutan, and the Debtor's failure to file a plan and disclosure statement. The Debtor opposed the UST's motion and filed a proposed plan and disclosure statement in response. The UST withdrew the pending motion, however, approval of the disclosure statement was denied for various reasons. On April 18, 2014, the UST filed a second motion seeking to convert the case to chapter 7 or to appoint a chapter 11 trustee. On May 8, the court granted the UST's second motion and ordered the appointment of a chapter 11 trustee. James S. Lowe was appointed to serve as the trustee on May 20.

**Rutan's Fee Application.** On June 5, 2014, Rutan filed its Fee Application requesting compensation in the amount of $130,513 and reimbursement of expenses in the amount of $9,162.01 for the period of October 25, 2013, until April 30, 2014.[4] The Fee Application includes copies of Rutan's billing records and is supported by a declaration from attorney Djang, which states that she was one of the attorneys responsible for "overseeing the billing in this matter." (Doc. No. 336 at ¶ 3.) There is no mention in the Fee Application or in Djang's declaration regarding Rutan's $50,000 Retainer, and the "billing attorney" named on the billing records, Derek Dundas, had heretofore been a stranger to the bankruptcy case.

The billing records included entries for prepetition services performed on September 23 and 24, 2013 ($1,020), and for services performed from October 8,

---

[4]Rutan apparently provided no services directly to the Debtor between April 30 and May 30 when the court approved Fromme's substitution of counsel. All time billed after April 30 appears to be related to preparation of the Fee Application.

2013, through October 25, 2013 ($15,903.28) (collectively, the "Prepetition Services"). The UST filed an objection to the Fee Application on numerous procedural and substantive grounds. The UST's objection was based, *inter alia*, on Rutan's failure to properly disclose its receipt and use of the Retainer, and inconsistencies in the pleadings regarding the Retainer.[5]

Rutan responded to the UST's objection with declarations from Fromme (Doc. No. 427) and Djang (Doc. No. 428). They both acknowledged that Rutan had received the Retainer in addition to three prepetition payments totaling $4,489 which had been applied to the Debtor's account. Djang disclosed that the Retainer had never been applied to the account as represented by Fromme in support of the Employment Application. Djang also acknowledged that Rutan was in fact a creditor of the Debtor when the petition was filed. She apologized for the "inadvertent error" and offered to waive the balance which Rutan had been carrying on its books for the Prepetition Services in the amount of $15,983.28. She characterized the omission as "clerical errors" and "inadvertent mistakes," and argues that disallowance of Rutan's postpetition fees would be a "windfall" to the Debtor.

**ISSUES PRESENTED.**

1. Whether entry of the Employment Order initially approving Rutan's status as a "professional person" precludes subsequent review of Rutan's eligibility for employment under Bankruptcy code § 327(a) and Rule 2014(a); and

2. Whether Rutan's unpaid claim for the Prepetition Services made Rutan a creditor and therefore not "disinterested" and not eligible for employment under

---

[5] The Fee Application also did not include a statement of approval from the Debtor, a requirement set forth on the UST's Guidelines for the Review of Professional Fees. (¶ 2.2.2.) In response to this issue, Djang acknowledged that "[d]ebtor's President, Victor Breedlove . . . had spoken with the chapter 11 trustee, and did not approve a portion of Rutan's fees." Djang Reply to United States Trustee's Objection, Doc. No. 425, 8:24-9:5, July 3, 2014.

§ 327(a) and compensation from the estate under § 330, and if so;

3. Whether the court may disregard the "not disinterested" problem and allow compensation to Rutan for postpetition services on equitable grounds.

**DISCUSSION AND CONCLUSIONS OF LAW.**

**Review of a Professional's Eligibility for Employment and Compensation.** Rutan requests approval of its Fee Application pursuant to § 330 which authorizes the bankruptcy court to award "reasonable compensation for actual, necessary services rendered by the . . . professional person . . . ." § 330(a)(1)(A). However, applicable here, § 330 only applies to "professional persons" employed under § 327. § 330(a)(1). Pursuant to § 327(a), a debtor in possession, *with the court's approval*, may employ one or more professional persons, "that do not hold or represent an interest adverse to the estate, *and that are disinterested persons* . . . ." (Emphasis added.)[6]

An order authorizing the employment of a professional person under § 327(a) may be reviewed by the bankruptcy court at any time. Section 328(c) expressly permits the bankruptcy court to revisit the employment of a professional under section 327(a) and to deny compensation for services and reimbursement of expenses, if, at any time during the employment, "such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed."

The court retains a continuing supervisory power to revisit a professional person's qualifications for employment and to disqualify a professional whose representation otherwise fails to conform to the disinterestedness standard. *Security Bank of Washington v. Steinberg (In re Westwood Shake & Shingle, Inc.)*, 971 F.2d 387, 390 (9th Cir. 1992).

---

[6] The definition of a "person" under § 1-1(41) includes an "individual, partnership and corporation." There is no dispute that Rutan is a "professional person" within the meaning of § 327(a).

8

**Rutan was not "Disinterested."** Section 327(a) prescribes a two-pronged test for the employment of a professional person - the "adverse interest" test and the "disinterestedness" test, both of which must be met before a professional person is eligible to be employed. Failure to satisfy either of the two prongs under § 327(a) cannot be cured by the clients' waiver or consent; both must be met. *See U.S. Tr. v. S.S. Retail Stores Corp. (In re S.S. Retail Stores Corp.)*, 211 B.R. 699, 703 (9th Cir. BAP 1997) (The attorney "is not prevented from representing the Debtor under the California Rules, but is prevented, as a non-disinterested party, from representing the Debtor pursuant to section 327 of the Bankruptcy Code [which] provides for no such waiver."), appeal dismissed *per curiam*, 162 F.3d 1230 (9th Cir. 1998).

Section 101(14) defines "disinterested person" as, *inter alia*, a person who "*is not a creditor.*"

A "creditor" is defined in § 101(10) of the Bankruptcy Code as:

> (A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor.

A "claim" is defined in § 101(5) as:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.

The term "claim" and thus the classification of who is a "creditor" is broadly construed. *See In re Jensen*, 995 F.2d 925, 928 (9th Cir. 1993). The *allowance* of a claim against the Debtor is governed by "applicable law." Section 502(a) & (b)(1) (stating that a claim is deemed allowed unless a party in interest objects and the claim is determined to be unenforceable against the debtor or property of the debtor under any agreement or applicable law for a reason other than because the claim is contingent or unmatured). However, federal law determines when a claim arises for purposes of a bankruptcy proceeding, "a claim is ripe as an *allowable* claim in a bankruptcy proceeding even if it is a cause of

9

action that has not yet accrued." *Cool Fuel Incorporated v. Board of Equalization of the State of California (In re Cool Fuel, Inc.)*, 210 F.3d 999, 1006 (9th Cir. 2000) (emphasis added).

A professional who holds a claim against the debtor is not disinterested and is not eligible for employment and compensation from the estate.

> Section 327(a) prohibits the employment of professionals who hold or represent an interest adverse to the estate and who are not disinterested. The bankruptcy court does not have authority to allow the employment of a professional in violation of § 327, and the employment is void *ab initio*. . . . Any professional who the court determines . . . is not disinterested is not an officer of the estate during the time of conflict and must be denied compensation for services performed during the conflict pursuant to § 330.

*Mehdipour v. Marcus & Millichap (In re Mehdipour)*, 202 B.R. 474, 478 (9th Cir. BAP 1996) (emphasis in original, citations omitted), aff'd, *Mehdipour v. Millichap*, 139 F.3d 1303 (9th Cir. 1998).

Bankruptcy Code sections 327(a), 101(14) and 101(10)(A), ". . . taken together, unambiguously forbid a debtor in possession from retaining a prepetition creditor to assist it in the execution of its Title 11 duties." *United States Trustee v. Price Waterhouse*, 19 F.3d 138, 141 (3d Cir. 1994). The claim must be waived if the professional is to be employed. *In re Princeton Medical Management, Inc.*, 249 B.R. 813, 816 (Bankr. M.D. Fla. 2000) (emphasis added).

Here, there is no dispute that Rutan provided substantial Prepetition Services to the Debtor. Throughout the case, Rutan carried a balance on its books in the amount of $15,903.28 for those Services. To the extent that Rutan retained any legal right to seek compensation for those Services at the commencement of this case, whether unliquidated, contingent, disputed, or otherwise, that right to seek compensation constituted a "claim" against the Debtor making Rutan a creditor. Rutan was therefore not "disinterested" within the meaning of § 101(14), was not eligible for employment under § 327(a), and is not eligible for compensation under § 330.

/ / /

**Rutan Failed to Satisfy its Duty of Disclosure.** A professional seeking to be employed under § 327 has an affirmative duty to make a complete and candid disclosure of all facts concerning its transactions with the debtor. Fed.R.Bankr.P. 2014(a) requires disclosure under penalty of perjury of all relevant facts necessary for the court to determine the applicant's ability to meet the criteria of § 327(a). Specifically, it requires that the application for employment be accompanied by a "verified statement of the person to be employed setting forth the person's connections with the debtor. . . ." Rule 2014(a) is supplemented by Region 17 United States Trustee Program Guidelines, Section 2.1.4., which requires that the professional's verified statement must affirmatively show, *inter alia*, that the professional complies with the requirements of 11 U.S.C. § 101(14) and 327(a).

> Pursuant to § 327, a professional has a duty to make full, candid and complete disclosure of all facts concerning his transactions with the debtor. Professionals must disclose all connections with the debtor, creditors and parties in interest, no matter how irrelevant or trivial those connections may seem. The disclosure rules are not discretionary. The duty to disclose is not vitiated by negligent or inadvertent omissions. A court may sanction a professional for disclosure violations regardless of actual harm to the estate.

*In re Mehdipour*, 202 B.R. at 480 (citations omitted).

The courts have imposed a very high standard for compliance with the Rule 2014(a) disclosure requirement.

> Coy, or incomplete disclosures . . . are not sufficient. "[T]he duty is one of complete disclosure of *all facts*." "The burden is on the person to be employed to come forward and make *full, candid, and complete disclosure*."
>
> The disclosure rules are applied literally, even if the results are sometimes harsh. Negligent or inadvertent omissions "do not vitiate the failure to disclose." Similarly, a disclosure violation may result in sanctions "regardless of actual harm to the estate."

///

*Neben & Starrett, Inc. v. Chartwell Financial Corp. (In re Park-Helena Corp.)*, 63 F.3d 877, 881 (9th Cir. 1995), cert. denied, *Neben & Starrett, Inc., v. Chartwell Financial Corp.*, 516 U.S. 1049 (1996) (emphasis in original, citations omitted) (discussing the principles underlying disclosure requirements of §329 and FRBP 2016 but noting that the disclosure requirements of FRBP 2014 are applied just as strictly.)

Failure to make full disclosure may result in disqualification of a professional person. "If the lack of disclosure is discovered after employment is approved it may also result in denial and disgorgement of compensation." *In re Hathaway Ranch Partnership*, 116 B.R. 208, 220 (Bankr. C.D. Cal. 1990) (citations omitted).

Here, Rutan's Employment Application was supported by a sworn statement from Fromme affirmatively disavowing any claim against the Debtor. However, at the time Fromme was fully aware that Rutan had provided substantial Prepetition Services to the Debtor and he either knew, or easily could have determined, that Rutan had not yet applied its Retainer to pay for those Services. The duty of disclosure is a continuing one, yet during the six months Rutan carried the prepetition balance on its books, including through the year-end when law firms traditionally close their books, Rutan made no effort to disclose its status as a creditor of the Debtor, waive the balance on the account, and address the problem at a time when the court might have been able to enter an order to "equitably" correct the problem. Rutan's status as a prepetition creditor of the Debtor was not called to the court's attention until after its employment had terminated, when Rutan sought approval of its legal fees. By then, it was too late to satisfy the disclosure requirements of the Code and the Rules. "Absent the spontaneous, timely and complete disclosure required by section 327(a) and Fed.R.Bankr.P. 2014(a), court-appointed counsel *proceed at their own risk*." *Rome v. Braunstein*, 19 F.3d 54, 59 (1st Cir. 1994) (emphasis in original).

In her response to the OSC, Djang acknowledges Rutan's "failure to draw down on the $50,000 prepetition Retainer" and characterizes the error as both an

"inadvertent clerical error" and an "internal miscommunication." (Response to OSC: doc #488 at 1) However, the details of what actually happened with regard to the Retainer are difficult to follow. Djang states categorically that the proper "draw down" request was submitted to Rutan's accounting department by some unidentified "responsible attorney":

> [T]he Rutan *attorneys primarily responsible* for the Debtor's representation in its chapter 11 case communicated to Rutan's accounting department that the Retainer needed to be drawn down before the filing of the bankruptcy petition in this case.

*Id.* (emphasis added).

The only attorneys "primarily responsible" for this chapter 11 case were Fromme and Djang. However, in their declarations and subsequent comments to the court, both Fromme and Djang disavow any responsibility for, or participation in, Rutan's internal billing procedures. At oral argument, Djang stated that she is not a partner with Rutan and was not personally involved in the accounting process for this case.

Similarly, the Response Brief is equivocal as to Fromme's authority and role in the accounting process:

> Eric Fromme, the lead attorney on the Debtor's case, intended to draw down on the Retainer before filing the Debtor's bankruptcy petition, and gave instructions to prepare and submit a check request to Rutan's accounting department, which is required by Rutan to draw down on "client trust funds."

*Id.* at 2 (footnote omitted).

However, Fromme's version of the events appears to contradict the above statement from the Response Brief. First, he discusses his experience and his practice with regard to the application of prepetition retainers:

> 1. I ... was previously a partner at [Rutan] . . . .
>
> 5. I have over 17 years of experience representing debtors in chapter 11 cases.

/ / /

/ / /

13

> 8. When representing debtors, it is my practice and procedure to make sure that all time is current 1-2 days prior to the filing of the petition. . . . *I then instruct that the retainer be drawn down based on the prepetition fees and costs incurred, plus the estimate.*

Doc. No. 490 at ¶ 1-8 (emphasis added).

Fromme then disavows any personal responsibility for, and knowledge of, what actually transpired with regard to the Retainer:

> 7. However, Rutan's policy is that the accounting department must receive a written request to draw down on any retainer signed by the [unnamed] billing attorney for the matter before a Retainer will be drawn and applied. *Because I was not the billing attorney for the Debtor, I could not submit the necessary written request.*
>
> 8. I believe that I gave instructions to the staff at Rutan as to how to proceed with the written request to draw down the Retainer. However, for reasons that are not known to me, these instructions were not implemented . . . .

*Id.*

Notably absent from Rutan's response to the OSC is evidence upon which the court can find that anybody actually submitted any request to the accounting department to apply the Retainer before the case was filed. There is no copy of the written instructions. There is no statement from the "billing attorney," Derek Dundas, to explain what happened. There is no statement from Rutan's accounting department to confirm that any instructions were given with regard to the Retainer. As a partner of Rutan, Fromme undoubtedly had access to Rutan's billing records to confirm whether the Retainer had been applied before the petition was filed. Fromme filed a declaration under penalty of perjury in support of the Employment Application stating absolutely that "Rutan is not a creditor of the Debtor." Fromme's Declaration is very specific with regard to the amount of the Prepetition Services and the amount of the Retainer remaining at the commencement of the case. What information were those statements based on?

Even after the petition was filed, Fromme, as a partner, had the ability to discover the accounting "error" and the fact that Rutan was carrying a substantial

account receivable or work-in-process balance for the Debtor on its books. If he had immediately and voluntarily disclosed the issue, and made adjustments to correct the problem, the court would have an entirely different set of facts and circumstances upon which to base this ruling.

**The Court's Equitable Discretion.** Rutan asks the court to exercise its discretion equitably to allow compensation notwithstanding the "disinterestedness" issue. In appropriate circumstances, the court has the equitable power to award fees and/or expenses to a professional whose employment was approved by the court after *full disclosure of all potential conflicts*, whose employment is subsequently determined to be inappropriate, and who provided services in reliance upon the employment order, so long as the services performed were outside of any conflict of interest, and the lack of disinterestedness did not actually interfere with the professional's representation of the estate. *First Interstate Bank of Nevada, N.A. v. CIC Inv. Corp. (In re CIC Inv. Corp.)*, 192 B.R. 549, 553-54 (9th Cir. BAP 1996).

Here, there is nothing in the record to suggest that Rutan's lack of "disinterestedness" interfered with the service it rendered to the Debtor; the chapter 11 trustee was appointed for other reasons. However, the court does not need to consider that factor because the predicate for the discretionary exercise of equity, full disclosure, was notably absent from the Employment Application. The court cannot find that Rutan provided legal services in reasonable reliance on the Employment Order when Rutan failed to fully and candidly disclose critical facts affecting its "disinterestedness." Rutan was disqualified from employment under § 327(a) without regard to the quality of the services it subsequently rendered postpetition. Had Rutan made the proper disclosures, the court would have denied its Employment Application in the beginning of the case and could have given Rutan an opportunity to waive its claim and correct the problem before approving the employment.

Section 329 and Rule 2014 mandate full and candid disclosure in employment applications. Most case law relating to the compensation of ineligible professionals concerns the sufficiency of disclosure and not the statutory eligibility issue. One of the cases that Rutan cites in support of the Fee Application is *In re Roberts*, 75 B.R. 402 (D.Utah, 1987). In that case, the law firm filed chapter 11 bankruptcy petitions for a corporation, and for its principals, both of whom it had represented in various matters prepetition. At the time the cases were filed, the corporate debtor owed about $2,000 in legal fees to the law firm. The firm decided, without judicial review, that the potential conflicts of interest arising from its dual representation of both debtors were not real and not worthy of disclosure. In addition, it did not disclose its prepetition claim against the corporate debtor. The court approved both the employment applications.

A year and a half later when the bankruptcy court discovered the conflict of interest and dual representation, it *sua sponte* denied the law firm's unopposed applications for payment. On appeal, the court held that representation of both the corporation and its principals was not a *per se* conflict, but a potential conflict that warranted further inquiry. However, it also addressed separately the eligibility issue in the corporate case: "This [eligibility] inquiry is similar to, but not identical with, the issue of whether actual conflicts are present. The issue is *whether the legislature has determined that certain relationships preclude employment independent of further inquiry*." (Emphasis added, *id*. at 406.) The court further explained that the statutory bar against employment was not an "ambiguous provision" of the code open to interpretation. *Id*. at 408. With regard to the principals, the court ultimately allowed those fees and costs. *Id*. at 413. However, the court affirmed the bankruptcy court's denial of attorney's fees and costs in the corporate case because the law firm was statutorily ineligible to represent the corporation.

Rutan offers the *Roberts* decision to illustrate the distinction between

inadvertent and intentional non disclosures. However, the issue in *Roberts* that is relevant to this case was not disclosure, but the *statutory ineligibility of the attorney as a prepetition creditor* in the corporate case. In *Roberts*, the law firm was denied compensation for its representation of the corporation because the firm had been simply ineligible for employment.

Rutan also cites the case, *In re CIC Inv. Corp.*, 192 B.R. 549 (9th Cir. BAP, 1996), in its argument that there is a distinction between cases where employment had been previously approved and later revoked because of lack of disinterestedness, and those where employment was never approved in the first place. However, the circumstances were different in *In re CIC Inv. Corp.* In that case, the attorney made complete and full disclosure before employment which showed that the attorney was a prepetition creditor of the debtor. The court approved the application anyway and a creditor bank appealed the employment order. The Bankruptcy Appellate Panel said that the attorney had a right to rely on the employment order because of the state of the law at that time. The case was reversed and remanded for the bankruptcy court to decide whether the attorney's status adversely affected its representation of the debtor. *Id.* at 555. Rutan's case is distinguishable. In the *CIC Investment* case, the attorney's disclosure was complete. The error in initially approving the employment was the court's, not the applicants.

If there was ever any uncertainty regarding the power of the bankruptcy court to use equitable principles and § 105 to contravene an unambiguous statute, the U.S. Supreme Court, in *Law v. Siegel,* 134 S.Ct. 1188 (2014), put the nail in that coffin. It held that the bankruptcy court's statutory authority under § 105(a) to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code, must be exercised within the limits of the Bankruptcy Code and may not "override explicit mandates of other sections of the Bankruptcy Code." *Id.* at 1194. "We have long held that 'whatever equitable

powers remain in the bankruptcy courts must and can only be exercised within the confines of' the Bankruptcy Code." *Id.* In *Law*, the Supreme Court concluded that the Bankruptcy Court's decision to surcharge a state law exemption was inappropriate because it contravened specific provisions of the Code. *Id.* at 1195. While Rutan suggests that the court still has the discretion to allow and authorize the payment of fees to a not-disinterested professional, the exercise of that discretion would directly contravene the relevant provisions of the Bankruptcy Code, specifically the mandate that "creditors" cannot be employed under § 327(a).

**The OSC Regarding Disgorgement.** When the court discovered, in the process of reviewing Rutan's Fee Application, that Rutan was possibly ineligible for employment, based on the unpaid Prepetition Services, the court *sua sponte* issued an OSC why Rutan should not be compelled to disgorge the Retainer. (Doc. No. 434.) The hearings on the Fee Application and the OSC were set together. For the reasons set forth above, the court has determined that Rutan was, and is, statutorily ineligible for employment pursuant to § 327(a) and compensation pursuant to § 330. The only remaining issue is what to do about the Retainer.

Advance payments of fees to a professional for legal services in connection with a bankruptcy case are property of the bankruptcy estate no matter how they may be described in some collateral agreement between the parties. *In re Hathaway Ranch Partnership*, 116 B.R. at 217. "The debtor in possession, as fiduciary to the bankruptcy estate, must maintain and account for all property of the estate to its creditors and to [the] court. It is impossible for the debtor in possession to do so if its attorney . . . treats the funds as the professional's own money." *Id.* at 217-18. If the court does not discover that a professional was ineligible for employment until after the employment is approved, the court may order disgorgement of compensation already paid. *Id.* at 220.

18

Here, Rutan is holding property of the estate worth $50,000. Rutan has not been paid for the Prepetition Services, but Rutan has not asserted a security interest in the Retainer, or any other right to hold the Retainer for the purpose of paying those fees.[7] The Retainer constitutes "property that the trustee may use" and must therefore, be turned over to the chapter 11 trustee. § 542(a).

**CONCLUSION.**

Based on the foregoing, the court finds and concludes that Rutan was a prepetition creditor of the Debtor at the time the petition was filed based on an open account for unpaid legal services in the amount of $15,983.28. As the holder of a prepetition claim, Rutan was a "creditor" of the Debtor, was not disinterested within the meaning of § 101(14)(A), and was not eligible for employment under § 327(a). Although Rutan belatedly offered to waive its prepetition claim, this does not change the fact that the claim was not disclosed to the court at any time before and during Rutan's employment. Accordingly, Rutan is not eligible for compensation pursuant to § 330 and the Fee Application will be denied.

Rutan's Retainer is property of the bankruptcy estate. Therefore, within 14 days, Rutan shall account for and turnover to the chapter 11 trustee the entire $50,000 retainer it was paid in connection with this bankruptcy case.

Dated: September 25, 2014

W. Richard Lee
United States Bankruptcy Judge

---

[7] Rutan did not lodge a copy of its fee agreement with the Debtor. However, a professional who contends that the prepetition retainer was "earned on receipt" would be a potential defendant in a fraudulent transfer action and would be automatically disqualified from representing the debtor in possession. *In re Hathoway Ranch Partnership*, 116 B.R. at 216.

Case 13-16954    Filed 09/25/14    Doc 596

## Instructions to Clerk of Court
### Service List - Not Part of Order/Judgment

The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below. The Clerk of Court will send the Order via the BNC or, if checked_____, via the U.S. mail.

Debtor(s), Attorney for the Debtor(s), Bankruptcy Trustee (if appointed in the case), and __X__ Other Persons Specified Below:

Riley C. Walter, Esq.
Attorney at Law
205 E. River Park Circle, Ste. 410
Fresno, CA 93720

Caroline R. Djang, Esq.
Rutan & Tucker, LLP
611 Anton Blvd., Ste. 1400
Costa Mesa, CA 92626-1931

Robin Tubesing, Esq.
Office of the U.S. Trustee
U.S. Courthouse
2500 Tulare Street, Suite 1401
Fresno, CA 93721